**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JEAN DOVIN,** | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 23-3175-KSM** |
| **CHESTER COUNTY DEPARTMENT OF AGING SERVICES, et al.,** | |
| Defendants. | |

**MEMORANDUM**

MARSTON, J.                                                       August 31, 2023

Before the Court is Plaintiff Jean Dovin's motion for an emergency temporary restraining order ("TRO") and motion for preliminary injunction to prevent the Chester County Court of Common Pleas from holding a hearing on Defendant Chester County Department of Aging Services's ("the Department")[1] petition for an emergency Protective Services Review Hearing. Plaintiff's motion also seeks to prevent Defendants from contacting Plaintiff except through her counsel and from withholding disclosure of the Report of Need ("RON"). (Doc. Nos. 8, 14.) Defendants oppose the motion. (Doc. Nos. 16, 17.) For the reasons that follow, the Court denies the motions.

**I.**

Plaintiff Jean Dovin is a woman aged in her 90s. (Doc. No. 4 at ¶ 10.) She brings this suit because she alleges that the Department has previously—and continues to—improperly

---

[1] Plaintiff has also named Chester County and Sandra Murphy, Director of the Chester County Department of Aging Services, acting in her official capacity, as Defendants in this matter. (Doc. No. 4.)

contact her for an interview under the authority of the Older Adults Protective Services Act ("OAPSA") (35 P.S. § 10225.101 et seq.).  (Doc. No. 4 at ¶¶ 32–42.)  OAPSA is a Pennsylvania statute intended to provide "services necessary to protect [the] health, safety and welfare" of older adults who "lack the capacity to protect themselves and are at imminent risk of abuse, neglect, exploitation or abandonment."  35 P.S. § 10225.102.  Under the statute, "Any person having reasonable cause to believe that an older adult is in need of protective services may report such information to [the Department] which is the local provider of protective services."  *Id.* § 10225.302.  Upon receiving such a report ("RON"), "it shall be the agency's responsibility to provide for an investigation of each report . . . . [which shall be] initiated within 72 hours after the receipt of the report."  *Id.* § 10225.303(a).

Plaintiff alleges that she is competent, does not have any mental disabilities, and is well-cared for by her daughters. [2]  (Doc. No. 4 at ¶¶ 10, 16.)  Plaintiff "desires to exercise her right to be let alone by government and no longer wishes to be 'rescued' by society through protective services."  (*Id.* ¶ 15.)  In January 2022, Plaintiff received a written request for an in-person interview with the Department to determine whether Plaintiff was "medically compliant."  (*Id.* ¶ 21.)  Plaintiff gave written notice to the Department that she did not wish to meet with the Department or any of its employees; she instead provided a video of Plaintiff being interviewed by her counsel to confirm her mental status and living conditions.  (*Id.* ¶ 24.)  Plaintiff brought a complaint in federal court after the Department persisted in its demand to meet with Plaintiff (Case No. 2:22-CV-00200); however, Plaintiff voluntarily withdrew her complaint eight days later, after the parties settled the dispute.[3]  (*Id.* ¶¶ 25–27.)

---

[2] Plaintiff lives with two of her daughters.  (Doc. No. 4 at ¶ 11.)

[3] Plaintiff's husband, Paul Dovin, who has since passed, was also the subject of older adult protective services proceedings.  (Doc. No. 4 at ¶ 11.)  After guardianship proceedings, Plaintiff's husband was

On or about August 10, 2023, the Department received an additional RON from a verifiable source suggesting that Plaintiff may need protective services.[4] (Doc. No. 8-3 at 3–4.) Since then, the Department has unsuccessfully requested to meet with Plaintiff to determine whether Plaintiff's needs are being met.[5] (*Id.* at 4.) As such, given the Department's latitude of 72 hours to initiate the statutory mandate (35 P.S. § 10225.303(a)), the Department filed an Emergency Petition for Access to [Plaintiff], *In the Interest of Jean Dovin*, No. 15-23 OA-23-0001 (Commw. Ct. Pa.), for the agency to complete its "investigation, client assessment, service plan and/or delivery of any needed services." (Doc. No. 8-3 at 2–4.) The Chester County Court of Common Pleas originally scheduled a hearing in this matter for Monday, August 28, 2023 at 10:00 a.m. The Court was later advised that the hearing was briefly continued to Thursday, August 31, 2023 at 3:30 p.m. Plaintiff, in filing her motions for a temporary restraining order and preliminary injunction, requests that this Court stop the state court from proceeding with the

---

placed at the University of Pittsburgh Medical Center. (*Id.*) The Department asserts that "Sadly, the Paul Dovin matter allowed others to see how Jean Dovin was being cared for, and a [RON] flowed out from that exposure." (Doc. No. 17 at 3.) It was this initial RON that was the subject of the Plaintiff's January 2022 federal complaint.

[4] Although Plaintiff contends that the Department is required to turn over the RON and identify the individual who made the report, the Department maintains that it is obligated under the statute to keep the individual who submitted the RON confidential. 35 P.S. § 10225.306(a) ("Information contained in reports . . . shall be considered confidential . . . ."); *Id.* § 306(b) ("The release of information that would identify the person who made a report of suspected abuse . . . is hereby prohibited unless the secretary can determine that such a release will not be detrimental to the safety of such person."). In order to maintain the confidentiality, the Department provided plaintiff with a summary: "RS reported that consumer had a 'potent scent of urine'. Consumer was saturated and there was ''moisture up her back'. RS was concerned about sores but was unable to check. Consumer appeared dirty, her hair was unkept. Her clothes were dirty with stains. . . . Her fingernails were long with dirt underneath and not maintained. Consumer cannot extend her right leg due to being in the sitting position all the time. [RS = Referral Source; Consumer is Jean Dovin]." (Doc. No. 8-3 at 3–4.) A copy of the RON was submitted to the Court for *in camera* review.

[5] A Department Care Manager visited Plaintiff's purported residence on or about August 10, 2023 but was unable to meet with Plaintiff. (Doc. No. 8-3 at 4.) Plaintiff alleges that the Care Manager falsely accused Plaintiff's daughter of hiding Plaintiff in the house. (Doc. No. 4 at ¶ 32.) Subsequent attempts to arrange to meet with Plaintiff through her counsel have failed. (Doc. No. 8-3 at 4.)

scheduled emergency petition hearing, prevent the Department from contacting Plaintiff other than through her counsel, and prevent the Department from withholding the disclosure of the RON. [6] (*See generally* Doc. No. 8.)  Plaintiff alleges that OAPSA is unconstitutional facially and as-applied to Plaintiff's facts and circumstances.  (*See id.* at 6.)  She brings this suit under 42 U.S.C. § 1983 for violation of her constitutional due process, equal protection, and Fourth Amendment rights.  (*Id.* at 6–20.)

## II.

Under Federal Rule of Civil Procedure 65, the Court has the power to "issue a temporary restraining order . . . if [the movant] clearly show[s] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 65(b).  "Courts apply one standard when considering whether to issue interim injunctive relief, regardless of whether a petitioner requests a [TRO] or preliminary injunction." *Thakker v. Doll*, 451 F. Supp. 3d 358, 364 (M.D. Pa. 2020) (citing *Ellakkany v. Common Pleas Ct. of Montgomery Cnty.*, 658 F. App'x 25, 27 (3d Cir. 2016)).  "Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances."  *Arrowpoint Cap. Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 318 (3d Cir. 2015) (quotation marks omitted).

A party seeking a preliminary injunction must present evidence showing:  "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving

---

[6] As an initial matter, federal law establishes that a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  The Supreme Court has found that 42 U.S.C. § 1983 expressly authorizes such federal action.  *Mitchum v. Foster*, 407 U.S. 225, 242–43 (1972).

party; and (4) that the public interest favors such relief." *Id.* at 318–19 (quotation marks

omitted). If a party fails to establish likelihood of success on the merits and irreparable harm—

what the Third Circuit has referred to as the "gateway factors" of this test—then the Court need

not consider whether all four factors balance in favor of granting preliminary relief. *See Reilly v.

City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017); *see also Arthur Treacher's Franchise

Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982) ("[A] failure to show a likelihood of success or failure

to demonstrate irreparable injury must necessarily result in the denial of a preliminary

injunction.").

Here, the Court denies Plaintiff's motions for an emergency TRO and for preliminary

injunction on one of the "gateway factors," because Plaintiff has failed to sufficiently

demonstrate that she will suffer an irreparable injury.[7]  Plaintiff requests that this Court enjoin a

state court from merely conducting a hearing on the Department's petition. (Doc. No. 8.)  But

the state court has not yet determined whether Plaintiff must comply with the Department's

requests for access to Plaintiff.  Thus, the threat of "harm" Plaintiff faces—the interview with the

Department—is not immediate.[8][9]  At most, Plaintiff's immediate consequence is to permit her

---

[7] The Court need not hold oral argument on Plaintiff's motions for a TRO and preliminary injunction.
*See Arrowpoint Cap. Corp.,* 793 F.3d at 324 (holding that it is the court's prerogative to determine
whether a hearing is necessary to address a "disputed factual issue").  This case does not involve any
questions of disputed fact, and the parties have agreed that no oral argument is necessary. (Doc. No. 14 at
¶ 4.)

[8] The Court makes no determination as to whether an interview with the Department constitutes an
"injury" within the meaning of Rule 65 of the Federal Rules of Civil Procedure.  The Court is not
persuaded by Plaintiff's showing that the Department has imminently threatened to proceed against
Plaintiff "even if she is competent and refuses services." (Doc. No. 15-1 at 19–20.)  The email exchange
provided in Plaintiff's exhibit appears incomplete. (*Id.*)  Regardless, the Court understands that the
Department, as represented by Mr. Stevens, merely intended to suggest that it could not guarantee any
outcome one way or another. (*Id.* at 19.)  This further counsels in favor of finding that there is no
*immediate* harm since the Department is uncertain of the course of action required, if any.

[9] The Department will only contact Plaintiff if the state court decides to grant the Department's
emergency petition.  As stated above, this is not an immediate harm to Plaintiff.  Similarly, withholding

attorneys to advocate on her behalf at the hearing.  As Plaintiff's counsel has asserted, Plaintiff is allegedly mentally competent and not in need of protective services–by that logic, she should ultimately prevail in the state court hearing.[10]  (Doc. No. 4 at ¶ 10, 16.)  *See Binsack v. Lackawanna Cnty. Dist. Att'ys Off.*, No. 3:08cv1166, 2009 WL 424715, at *4 (M.D. Pa. Feb. 19, 2009) ("[T]he court does not find that the threatened competency hearing threatens to impose an irreparable injury which is either clear or imminent. . . . [P]laintiff faces a hearing in state court, and—based on his representations to this court—could very well prove he is sufficiently lucid and self-aware to defend himself in state court. The injury plaintiff faces, therefore, is not imminent and may never even come to pass."); *cf. Schapiro v. Schapiro*, No. 95-0019, 1995 WL 61154, at *1-2 (E.D. Pa. Feb. 13, 1995) (stating in dicta that the Court would not stop the state court contempt hearing from proceeding because the potential harm to Petitioner—that he would have to pay arrearage of $2,000 per month—was not so much as to cause petitioner irreparable harm).  Because the Court finds that Plaintiff will not suffer an irreparable harm, the Court need not address the additional factors required for a TRO.

## III.

Assuming, *arguendo*, that having to submit to an interview constituted irreparable harm, the Court alternatively holds that abstention is warranted under the *Younger* doctrine.  It is a longstanding principle that "federal courts are obliged to decide cases within the scope of federal jurisdiction."  *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013).  The *Younger* abstention

---

the confidential RON is also not an immediate harm to Plaintiff.  Having reviewed the RON *in camera*, the Court finds that the RON is sufficiently similar to the summary set forth in Defendant's emergency petition (Doc. No. 8-3 at 3–4); thus, the withholding of the report does not constitute an *irreparable* harm.

[10] The parties report that the state court proceeding may also be further postponed or cancelled if they are able to reach an agreement to obtain an independent expert evaluation of Plaintiff.

doctrine "reflects a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Wattie-Bey v. Att'y Gen.'s Off.*, 424 F. App'x 95, 96 (3d Cir. 2011) (quoting *Gwynedd Props., Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1199 (3d Cir. 1992)). "Accordingly, 'in certain circumstances, district courts must abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding.'" *Id.* at 96–97 (quoting *Lazaridis v. Wehmer*, 591 F.3d 666, 670 (3d Cir. 2010)). "[F]or *Younger* abstention to apply, the ongoing state proceeding must fit into at least one of three categories: (1) state criminal prosecutions; (2) certain quasi-criminal civil enforcement proceedings; or (3) 'civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Shallenberger v. Allegheny Cnty.*, 2:20-cv-00073-NR, 2020 WL 1465853, at *6 (W.D. Pa. Mar. 26, 2020) (citing *Sprint*, 571 U.S. at 78).

Here, the Court finds that this case falls within the third category of exceptional cases. The third category "requires that the state's interest in maintaining the proceeding in question uninterrupted by the federal judiciary be 'of sufficiently great import.'" *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 627 (E.D. Pa. 2014) (citing *Juidice v. Vail*, 430 U.S. 327, 335 (1977)). In *Shallenberger*, a court in our neighboring district held that Pennsylvania state court pending adoption proceedings, which would lead to a final adoption order, were "uniquely in furtherance of a state court's ability to perform judicial functions" because the state court's "orders are unique to the state court's authority and obligation to ensure custody decisions in the best interests of the children." 2020 WL 1465853 at *7 (citing *Silver v. Ct. of Common Pleas of Allegheny Cnty.*, No. 19-1120, 2020 WL 584068, at *2 (3d Cir. Feb. 6, 2020)). The Court finds *Shallenberger* factually analogous and legally instructive to the circumstance here. State court

7

orders and proceedings dealing with protective services for older adults, like those for children, are also unique to the state court's ability to perform judicial functions. Here, the emergency petition hearing is being held after the Department received a RON of the possible neglect of Plaintiff. [11] This hearing is intended to "protect [the] health, safety and welfare" of older adults who may "lack the capacity to protect themselves and are at imminent risk of abuse, neglect, exploitation or abandonment." [12] 35 P.S. § 10225.102. Thus, the state has an important interest in maintaining uninterrupted jurisdiction over adult protective services proceedings. [13]

"Once a federal court has determined that there are state proceedings bearing the appropriate character, the court must then consider whether three conditions are met to determine whether *Younger* applies: 1) there is an ongoing state judicial proceeding; 2) the proceeding implicates important state interests; and 3) the plaintiff has an adequate opportunity in the state proceeding to raise constitutional issues." *G.S. v. Rose Tree Media Sch. Dist.*, 393 F. Supp. 3d 420, 425 (E.D. Pa. 2019) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). "The three *Middlesex* conditions are not dispositive, but are 'additional factors appropriately considered by the federal court before invoking *Younger*.'" *Id.* (citing

---

[11] Furthermore, the hearing ensures that the state court can perform its required investigation pursuant to the state statute. The hearing is not merely the "output" of those functions. *Cf. Malhan v. Sec'y United States Dep't of State*, 938 F.3d 453, 463 n.2 (3d Cir. 2019) (holding that orders relating to "debt from child support and spousal support orders" are not "uniquely in furtherance" of state judicial functions because they are "merely the output of those functions").

[12] Initially, Plaintiff contended that this emergency hearing may lead to guardianship proceedings which should be considered a "quasi-criminal proceeding" for purposes of Plaintiff's alleged constitutional violations. (Doc. No. 8 at 17.) But, in Plaintiff's supplemental brief, she contradictorily argues that these state court proceedings should *not* be viewed as "quasi-criminal" for proposes of the *Younger* abstention doctrine. (Doc. No. 15 at 4–7.) Because the Court finds the state court hearing falls into the third *Younger* category, the Court does not consider whether it may also fall into the second category.

[13] Plaintiff's additional requests—that the Department refrain from contacting her, except through counsel, and to release the RON—are part of these adult protective proceedings. As such, the *Younger* doctrine applies and this Court will also abstain from deciding these issues.

*Sprint*, 571 U.S. at 81).

Here, the Court finds that the *Middlesex* conditions weigh in favor of invoking the *Younger* doctrine.  First, there are ongoing state judicial proceedings relating to this matter.  *In the Interest of Jean Dovin*, No. 15-23 OA-23-001 (Commw. Ct. Pa.)  Second, as described above, the proceeding implicates important state interests, as the state has a strong interest in protecting the health and welfare of older adults in Pennsylvania who may be more vulnerable to neglect or abuse.  35 P.S. § 10225.102; *see also In the Interest of M.B.*, 686 A.2d 877, 881 (Pa. Cmmw. Ct. 1996) (stating, after setting forth the OAPSA's legislative policy as stated in Section 2 of the Act, "[t]his interest is certainly compelling").  Third, the plaintiff has adequate opportunity in the state proceeding to raise constitutional issues.  *Cf. In the Interest of M.B.*, 686 A.2d 877 (describing plaintiff's constitutional challenges to proceedings initiated under the OAPSA); *In re A.M.*, No. 1 OA 2013, 2013 WL 10254276, at *4 n.1 (Pa. Ct. Com. Pl. May 20, 2013) (same).

Finally, no exception to the *Younger* doctrine is applicable here.  "Even when these [three *Younger*] requirements are met, it is inappropriate to abstain . . . if the plaintiff establishes that '(1) the state proceedings are being undertaken in bad faith or for purposes of harassment or (2) some other extraordinary circumstances exist, such as proceedings pursuant to a flagrantly unconstitutional statute, such that deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted.'"  *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989) (citing *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 435).  Although Plaintiff has broadly asserted that the Department has harassed her now and in previous investigations, the Court understands that the Department recently received a verifiable report and has reviewed this report *in camera*; the Court finds that the state proceedings are not being

undertaken in bad faith or for purposes of harassment. [14]  (*See generally* Doc. No. 8.)  Plaintiff

has not shown that any other extraordinary circumstances exist.  Although Plaintiff asserts that

the statute is facially unconstitutional, Plaintiff has not established that the statute is *flagrantly*

unconstitutional.  *See Schapiro v. Montgomery Cnty. Ct.*, No. CIV. A. 95-0986, 1995 WL

348670, at *5 n.5 (E.D. Pa. June 8, 1995) ("[T]o qualify for this exception, the plaintiff must

show that 'every clause, sentence and paragraph' is 'patently violative of express constitutional

provisions.'"); *see, e.g.*, *In the Interest of M.B.*, 686 A.2d 877 (holding that procedures mandated

for petition practice did not violate the due process clause or the Fourth Amendment of the U.S.

Constitution); *In re A.M.*, 2013 WL 10254276, at *4 n.1 (same).[15]

## IV.

Based on the forgoing reasons, Plaintiff's motions for a TRO and preliminary injunction

are **DENIED**.  An appropriate order follows.

---

[14] Plaintiff speculates that the RON is a retaliatory measure following Plaintiff's appeal in *Dovin v. Honey Brook Golf Club, LP*, No. 2021-00471-RC (Pa. Commw. Ct. July 11, 2023).  Based on the Court's *in camera* review of the RON, the Court does not believe there is any basis for this speculation.

[15] To the extent that the Plaintiff is concerned about the consequences of the *Rooker-Feldman* doctrine on the likelihood of Plaintiff's success in federal court, the Court maintains that the *Younger* doctrine requires the federal court to abstain from interfering with state court proceedings.  *See Frankel v. Kessler*, No. 21-CV-0093, 2021 WL 229321, at *4 (E.D. Pa. Jan. 22, 2021) ("Frankel is pursuing constitutional claims or defenses that may be argued in his state case.  His primary argument in favor of a stay is based on his anticipation and speculation that the state court will be biased against his arguments and will evict him on the date of the hearing — even though this has not happened in the three cases Frankel has filed — potentially leaving him unable to pursue his claims in federal court because of the *Rooker-Feldman* doctrine. . . . However, his speculation that the state court might reject his constitutional arguments, even if legally incorrect and accomplished in a manner that cannot be rectified by this Court, does not remove his requested injunction from the ambit of the Anti-Injunction Act.").  *See also Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 296 (1970) ("Nor was an injunction necessary because the state court may have taken action which the federal court was certain was improper. . . . Again, lower federal courts possess no power whatever to sit in direct review of state court decisions."); *Zurich Am. Ins. Co. v. Superior Ct. for State of California*, 326 F.3d 816, 825 (7th Cir. 2003) ("Instead of an injunction by the federal district court, the aggrieved party's recourse is by appeal through the state court system and, ultimately, to the Supreme Court.")").